Barnard N. Madsen (4626)
Matthew R. Howell (6571)
Scott D. Preston (11019)
FILLMORE SPENCER LLC
3301 N. University Avenue
Provo, Utah 84604
Telephone: 801-426-8200
Facsimile: 801-426-8208
Email:  bmadsen@fslaw.com;
        mhowell@fslaw.com
        spreston@fslaw.com

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| RIMPORTS (USA) LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> LANGLEY/EMPIRE CANDLE LLC, a Kansas limited liability company,RICHARD LANGLEY JR., JOHN GOLDEN, JENNI KLIENOW, FRED RUTHERFORD, and BRANDI JONES, individuals, <br><br> Defendants. | **COMPLAINT** <br><br><br><br><br><br><br><br> Case No.: <br><br> Judge: |

Plaintiff Rimports (USA) LLC ("Plaintiff" or "Rimports"), by and through its attorneys, complains against Defendants Langley/Empire Candle LLC ("DefendantLangley/Empire"), Richard Langley Jr. ("Defendant Langley"), John Golden ("Defendant Golden"), Jenni Klienow ("Defendant Klienow"), Fred Rutherford ("Defendant Rutherford"), and Brandi Jones

("Defendant Jones") individuals (collectively, "Individual Defendants," and collectively with Defendant Langley/Empire, "Defendants"), as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.       Plaintiff Rimports is a Utah limited liability company with its principal place of business in Provo, Utah.

2.       Defendant Langley/Empire is a Kansas limited liability company with its principal place of business in Kansas City, Kansas.

3.       Upon information and belief, Defendant Richard Langley Jr. is an owner and president of Defendant Langley/Empire and is a resident of Lexington, Kentucky.

4.       Upon information and belief, Defendant John Golden is director of marketing for Defendant Langley/Empire and is a resident of Kansas.

5.       Upon information and belief, Defendant Jenni Klienow is supply chain manager for Defendant Langley/Empire and is a resident of Kansas.

6.       Upon information and belief, Defendant Fred Rutherford is executive vice president of Defendant Langley/Empire and is a resident of Kansas.

7.       Upon information and belief, Defendant Brandi Jones is a marketing assistant at Defendant Langley/Empire and is a resident of Kansas.

8.       This Court has subject matter jurisdiction for Plaintiff's causes of action against Defendants pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.     This Court also has subject matter jurisdiction for Plaintiff's causes of action against Defendants pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) because there are federal questions.

10.     This Court has supplemental subject matter jurisdiction for Plaintiff's common law tortious interference and conspiracy causes of action against Defendants pursuant to 28 U.S.C. § 1367.

11.     Upon information and belief, since 1999 Defendant Langley/Empire has purposely directed its activities at residents of the State of Utah to sell products to customers in the State of Utah, so this Court has personal jurisdiction over Defendant Langley/Empire.

12.     Upon information and belief, the activities of the individual Defendants were in the scope of their employment for Defendant Langley/Empire and their activities to carry out trade dress infringement, tortious interference, and conspiracy were directed towardor through their agent in the State of Utah, so this Court has personal jurisdiction over the individual Defendants.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to personal jurisdiction in this District.

## II.  NATURE OF CLAIMS

This case is about Defendants (and Defendant Langley/Empire's predecessor intentionally designing packaging so three of Defendant Langley/Empire's product lines would resemble Plaintiff's distinctive packaging and confuse consumers about the source of Defendant

Langley/Empire's goods and to profit from Plaintiff's goodwill.  This case is also about the individual Defendants' conspiracy and overt acts to do the same.

Plaintiff has trade dress infringement claims against Defendants under the Lanham Act, including claims for injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits and Plaintiff's damages,including treble damages for willful infringement, and Plaintiff's attorney fees and costs.

Plaintiff also has a supplemental state common law claim against Defendants for tortious interference, for which Plaintiff seeks its damages, including punitive damages.

### III.  GENERAL ALLEGATIONS

14.     Plaintiff incorporates by reference all preceding and subsequent numbered paragraphs and allegations of this Complaint as though fully set forth herein.

### A.  Plaintiff Established Its Trade Dress Rights in Its ScentSationals®Scented Wax Warmer Packaging

#### 1.  Plaintiff is the U.S. Retail Leader in Scented Wax Warmer Sales

15.     In 2008, Plaintiff introduced its ScentSationals® scented wax Fragrance Cubes, and its ScentSationals® Fragrance Hearth scented wax warmers.

16.     Since 2008, Plaintiff has continuously sold its ScentSationals® Fragrance Hearth scented wax warmers, and is the U.S. retail leader in sales in the product category.

17.     In fact, Plaintiff sells its ScentSationals® Fragrance Hearth scented wax warmers in over 3,500 Walmart and 500 Hobby Lobby stores in the United States..

18.     From 2008 until the date of filing this complaint, Plaintiff has sold over 3.4 million of its ScentSationals® Fragrance Hearth scented wax warmers in the United States.

19.     Since 2010, Plaintiff has also manufactured, packaged, and supplied the Better Homes and Gardens® brand "Scented Wax Warmers" sold by Walmart, and has provided customer service to purchasers of those warmers.

20.     From 2010 until the date of filing this complaint, Plaintiff has sold over 6 million Better Homes and Gardens® brand "Scented Wax Warmers."

### 2.  2008:  Plaintiff Designed its ScentSationals®Warmer Packaging

21.     In 2008, Plaintiff designed its ScentSationals® scented wax warmer packaging.

22.     Plaintiff's scented wax warmer packaging is comprised of a combination of the following distinctive elements ("Plaintiff'sWarmer Packaging Trade Dress"):

a. **BOX DIMENSIONS**

   (1)  17.3 cm x 14.6 cm x 14.6 cm (height, width, depth)

b. **BASIC COLOR SCHEME**

   (1)  Full color on all four sides

   (2)  Two-toned:  the main body color contrasts with the color of decorative edge bands

   (3)  Decorative edge bands:  .7 cm-wide bands extend along the left and right edges from the top back edge toward the front, and down all four edges (.7 cm on each side of the package edges, or a combined 1.4 cm extending from eachedge) to the bottom of the package

COMPLAINT - 5

    c. **TOP** (viewed top to bottom)

       (1) <u>Registered trademark</u>:  "ScentSationals®"

       (2) <u>Description of product</u>:  ""Fragrance Hearth wax warmer"

       (3)  <u>Cutout</u>:  6 cm x 8.4 cm (extends to a cutout down front) showing the product lid

    d. **FRONT** (viewed top to bottom)

       (1) <u>Cutout</u>:  3.4 cm x 8.4 cm (extending from top) showing the product lid

       (2) <u>"Crossbar" showing product name</u>:  3 cm x 8.4 cm

       (3)  <u>Cutout</u>:  7.4 cm x 8.4 cm (extending below "crossbar" showing the product base

       (4) <u>Registered trademark</u>:  "ScentSationals®"

    e. **RIGHT SIDE**

       (1) <u>Directions for use with color photographs of the product</u>

    f. **LEFT SIDE** (viewed top to bottom)

       (1) <u>Name of the product</u>

       (2) <u>Color photograph of the product</u>

    g. **BACK**

       (1) <u>Description of product</u>:  "Fragrance Hearth wax warmer"

       (2) <u>Selling points text</u>

       (3) "<u>Caution:  Hot surfaces.  Keep out of reach of children</u>."

       (4) "<u>ETL" (Intertek Listed) logo</u>

COMPLAINT - 6

(5)  "<u>Distributed by</u>" information

(6)  "<u>MADE IN CHINA</u>"

(7)  <u>Barcode</u>

23.     Plaintiff's Warmer Packaging Trade Dress is inherently distinctive because no prior scented wax warmer manufacturer used a similar trade dress before 2008.

24.     Based on the facts in paragraphs 15. through 18. above and as evidenced by Defendants' intent to copy it, if it is not inherently distinctive, Plaintiff's Warmer Packaging Trade Dress has acquired secondary meaning.

25.     Since Plaintiff is the source of the Better Homes and Gardens® brand "Scented Wax Warmers" sold by Walmart, Plaintiff permits these warmers to be sold in packaging of the same dimensions, and with the same cutouts and crossbar as these distinctive elements of Plaintiff's Warmer Packaging Trade Dress, but with different artwork.

26.     Plaintiff has never given permission to Defendants to use any of the distinctive elements of Plaintiff's Warmer Packaging Trade Dress.

**B.   Plaintiff Established Its Trade Dress Rights in its ScentSationals®Plug-In Warmer Packaging**

**1.  Plaintiff is the U.S. Retail Leader in Plug-In Warmer Sales**

27.     In 2012, Plaintiff introduced its ScentSationals® "Plug-In Warmer" (a model that plugs directly into a wall outlet without an electrical cord that is smaller than its regular ScentSationals® Fragrance Hearth scented wax warmers).

COMPLAINT - 7

28.     Since 2012, Plaintiff has continuously sold its ScentSationals® Plug-In Warmers, and is the U.S. retail leader in sales in the product category.

29.     In fact, Plaintiff sells its ScentSationals® Plug-In Warmers in over 1,000 Walmart and 500 Hobby Lobby stores in the United States.

30.     From 2012 until the date of filing this complaint, Plaintiff has sold about a million of its ScentSationals® Plug-In Warmers in the United States.

31.     Since 2012, Plaintiff has also manufactured, packaged, and supplied the Better Homes and Gardens® brand "Plug-In Warmers" sold by Walmart, and has provided customer service to purchasers of those warmers.

32.     Since 2012 until the date of filing this complaint, Plaintiff has sold about 1.3 million Better Homes and Gardens® brand "Plug-In Warmers."

**2.  2011:  Plaintiff Designed its Plug-In Warmer Packaging**

33.     In 2011, Plaintiff designed its ScentSationals® "Plug-In Warmer" packaging.

34.     Plaintiff's ScentSationals® "Plug-In Warmer" packaging is comprised of a combination of the following distinctive elements ("Plaintiff's Plug-In Warmer Packaging Trade Dress"):

    a.  **BOX DIMENSIONS**

        (1)  13.9.cm x 9.8 cm x 10.8 cm (height, width, depth)

    b.  **BASIC COLOR SCHEME**

        (1)  Full color on all four sides

(2) <u>Two-toned</u>:  the main body color contrasts with the color of decorative

edge bands

(3) <u>Decorative edge bands</u>:  .5 cm-wide bands extend along the left and

right edges from the top back edge toward the front, and down all four edges

(.5 cm on each side of the package edges, or a combined 1 cm extending

from each edge) to the bottom of the package

c.  **TOP** (viewed top to bottom)

(1) <u>Trademark</u>:  Oval "S" logo

(2) <u>Cutout</u>:  3.8 cm x 5.8 cm (extends to cutout down front) showing the top

of the product

d.  **FRONT**

(1) <u>Cutout</u>:  8 cm x 5.8 cm (extending from top) showing the top of the

product

(2) "<u>Crossbar</u>":.9 cm x 5.8 cm

(3) Product name

(4) <u>Cutout</u>:  2.6 cm x 5.8 cm (extending below "crossbar") showing the

plug-switch portion of the product

(5) <u>Product name</u>:  "Plug-In Warmer"

e.  **RIGHT SIDE** (viewed top to bottom)

(1) <u>Directions for use under3 color photographs of the product used with</u>

<u>red wax</u>:  (left to right) "Add one ScentSationals® fragrance cube and

COMPLAINT - 9

switch light on / To clean, remove ceramic dish when wax is cool and solid, then... / Place ceramic dish in freezer for 10-20 minutes.  Wax will easily come out."

 (2) <u>Product name</u>

 (3) <u>Registered trademark</u>:  ScentSationals®

f. **LEFT SIDE** (viewed top to bottom)

 (1) <u>Photograph of the product plugged in to the bottom plug of a wall outlet</u>

 (2) Product name

 (3) <u>Registered trademark</u>:  "ScentSationals®"

g. **BACK**

 (1) <u>Description of product</u>:  "Plug-In Warmer"

 (2) <u>Instructions for use</u>:

  "For best results, follow the instructions listed below:
  "1.  Plug the Plug-InWarmer into a standard 120V AC outlet.
  "2.  Place a fragrance cube in the top of the Plug-In warmer.
  "3.  Turn the switch to the 'on' position.
  "4.  Wait 5-10 minutes.
  "5.  Sit down, close your eyes, take a deep breath and enjoy!"

 (3) "<u>Caution:  Hot surfaces.  Keep out of reach of children</u>."

 (4) "*<u>fragrance Cubes sold separately</u>"

 (5) "<u>Distributed by</u>" information

 (6) "<u>For Indoor Use Only / MADE IN CHINA</u>"

 (7) <u>Barcode</u>

COMPLAINT - 10

35.     Plaintiff's Plug-InWarmer Packaging Trade Dress is inherently distinctive because no prior direct plug-in scented wax warmer manufacturer used a similar trade dress before 2011.

36.     Based on the facts in paragraphs 27. through 30. above and as evidenced by Defendants' intent to copy it, if it is not inherently distinctive, Plaintiff's Plug-In Warmer Packaging Trade Dress has acquired secondary meaning.

37.     Since Plaintiff is the source of the Better Homes and Gardens® brand "Plug-In Warmers" sold by Walmart, it permits these warmers to be sold in packaging of the same dimensions, and with the same cutouts and crossbar, as these distinctive elements of Plaintiff's Plug-In Warmer Packaging Trade Dress, but with different artwork.

38.     Plaintiff has never given permission to Defendants to use any of the distinctive elements of Plaintiff's Plug-In Warmer Packaging Trade Dress.

**C. 2010-2012:  Defendant Langley/Empire and Its Predecessor Intentionally Copied Plaintiff's Warmer and Plug-In Warmer Packaging Trade Dress for Its "Dual Warmer," "Fragrance Bar Warmer," and "Plug In Fragrance Warmer" Packaging**

**1.  2010:  Defendant Langley/Empire's Predecessor Intentionally Copied Elements of Plaintiff's Warmer Packaging Trade Dress for Its "Dual Warmer" Packaging**

39.     In 2010, For Every Body, LLC ("FEB"), designed a "Dual Warmer" that could warm a scented candle, scented wax, or essential oils.

COMPLAINT - 11

40.     In a series of 2010 emails from its product manager, FEB advised its packaging manufacturer that FEB wanted to copy Plaintiff's ScentSationals® Fragrance Hearth scented wax warmer packaging for FEB's "Dual Warmer," but wanted to make the package shorter.

41.     The FEB product manager's emails included photographs of a "Dual Warmer" package mocked up using a Plaintiff's ScentSationals® warmer package.   A copy of these emails, including the photographs, is attached hereto as **Exhibit A.**

42.     FEB's "Dual Warmer" packaging closely resembles distinctive elements of Plaintiff's Warmer Packaging Trade Dress.

43.     Defendant Langley/Empire acquired FEB in August 2011.

44.     Defendant Langley/Empire continues to sell "Dual Warmers" with packaging closely resembling distinctive elements of Plaintiff's Warmer Packaging Trade Dress.

45.     The Individual Defendants, who, on information and belief, each personally participated in Defendant Langely/Empire's actual infringement of Plaintiff's trade dress, are individually and collectively responsible for packaging design decisions of Defendant Langley/ Empire and are thus each individually and personally liable to Plaintiff for Defendant Langley/ Empire's continued use of distinctive elements of Plaintiff's Warmer Packaging Trade Dress in the packaging of Plaintiff Langley/Empire's "Dual Warmers."

### 2.     2011:   Defendants Intentionally Copied Elements of Plaintiff's Warmer Packaging Trade Dress for Defendant Langley/Empire's "Fragrance Bar Warmer" Packaging

COMPLAINT - 12

46.     In a series of 2011 emails from its product manager, copied to the Individual Defendants who were each participants in the design decisions, Defendant Langley/Empire provided specifications to its packaging manufacturer with distinctive elements resembling (indeed, nearly identical to) Plaintiff's Warmer Packaging Trade Dress for Defendant Langley/ Empire's "Fragrance Bar Warmer" packaging.

47.     The emails from Defendant Langley/Empire's product manager included photographs of the Better Homes and Gardens® brand Scented Wax Warmer packaging produced by Plaintiff.  A copy of these emails, including the photographs, is attached hereto as **Exhibit B.**

48.     Defendant's "Fragrance Bar Warmer" packaging closely resembles distinctive elements of Plaintiff's Warmer Packaging Trade Dress.

50.     The Individual Defendants, as evidenced by being addressees on the emails attached hereto as **Exhibit B**, are individually and collectively responsible for packaging design decisions of Defendant Langley/Empire and are thus each individually and personally liable to Plaintiff for Defendant Langley/Empire's use of distinctive elements of Plaintiff's Warmer Packaging Trade Dress in the packaging of Plaintiff Langley/Empire's "Fragrance Bar Warmers."

### 3.  2012:  Defendants Intentionally Copied Elements of Plaintiff's Plug-In Warmer Packaging Trade Dress for Defendant Langley/Empire's "Plug In Fragrance Warmer" Packaging

51.     In a series of 2012 emails from its product manager, copied to the Individual Defendants who were each participants in the design decisions, Defendant Langley/Empire advised its packaging manufacturer that Defendant Langley/Empire wanted to copy Plaintiff's ScentSationals® Plug-In Warmer packaging for Defendant Langley/Empire's "Plug In Fragrance Warmer" packaging.

52.     The emails from Defendant Langley/Empire's product manager included photographs of Plaintiff's ScentSationals® Plug-In Warmer packaging.  A copy of these emails, including the photographs, is attached hereto as **Exhibit C.**

53.     Defendant's "Plug In Fragrance Warmer" packaging closely resembles distinctive elements of Plaintiff's Plug-In Warmer Packaging Trade Dress.

54.     The Individual Defendants, as evidenced by being addressees on the emails attached hereto as **Exhibit C**, are individually and collectively responsible for packaging design decisions of Defendant Langley/Empire and are thus each individually and personally liable to Plaintiff for Defendant Langley/Empire's use of distinctive elements of Plaintiff's Plug-In Warmer Packaging Trade Dress in the packaging of Plaintiff Langley/Empire's "Plug-In Fragrance Warmers."

**FIRST CAUSE OF ACTION**
**(All Defendants)**
**Lanham Act – Deceptive Trade Practices / Trade Dress Infringement**
**Defendant Langley/Empire's "Dual Warmer" Packaging**
**(15 U.S.C. § 1125(a)(1)(B))**

55.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

56.     Plaintiff's Warmer Packaging Trade Dress, as described in paragraph 22., above, was inherently distinctive in 2008, or has become distinctive through secondary meaning.

57.     Beginning in 2010, Defendants decided to use and have continued to use elements of Plaintiff's Warmer Packaging Trade Dress on Defendant Langley/Empire's "Dual Warmer" packaging that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, or sponsorship of Defendant Langley/Empire's goods with Plaintiff's distinctive trade dress.

58.     Defendants' acts described in paragraph 57., above, were and are willful.

59.     Plaintiff's Warmer Packaging Trade Dress is not functional, at least in part because there are alternatives to packaging that Defendant Langley/Empire itself has used and currently uses that do not resemble Plaintiff's Warmer Packaging Trade Dress, including, but not limited to, acetate packaging.

60.     As a result of Defendants' actions, Plaintiff has been damaged and is likely to be further damaged.

61.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, and Plaintiff's damages, including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

WHEREFORE, Plaintiff requests the relief described below.

**SECOND CAUSE OF ACTION**
**(All Defendants)**
**Lanham Act – Deceptive Trade Practices / Trade Dress Infringement**
**Defendant Langley/Empire's "Fragrance Bar Warmer" Packaging**
**(15 U.S.C. § 1125(a)(1)(B))**

62.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

63.     Plaintiff's Warmer Packaging Trade Dress, as described in paragraph 22., above, was inherently distinctive in 2008, or has become distinctive through secondary meaning.

64.     Beginning in 2011, Defendants decided to use and have continued to use elements of Plaintiff's Warmer Packaging Trade Dress on Defendant Langley/Empire's "Fragrance Bar Warmer" packaging that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, or sponsorship of Defendant Langley/Empire's goods with Plaintiff's distinctive trade dress.

65.     Defendants' acts described in paragraph 64., above, were and are willful.

66.     Plaintiff's Warmer Packaging Trade Dress is not functional, at least in part because there are alternatives to packaging that Defendant Langley/Empire itself has used and currently uses that do not resemble Plaintiff's Warmer Packaging Trade Dress, including, but not limited to, acetate packaging.

67.     As a result of Defendants' actions, Plaintiff has been damaged and is likely to be further damaged.

68.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, Plaintiff's damages,

including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

WHEREFORE, Plaintiff requests the relief described below.

## THIRD CAUSE OF ACTION
### (All Defendants)
### Lanham Act – Deceptive Trade Practices / Trade Dress Infringement
### Defendant Langley/Empire's "Plug In Warmer" Packaging
### (15 U.S.C. § 1125(a)(1)(B))

69.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

70.     Plaintiff's Plug-In Warmer Packaging Trade Dress, as described in paragraph 34., above, was inherently distinctive in 2011, or has become distinctive through secondary meaning.

71.     Beginning in 2012, Defendants decided to use and have continued to use elements of Plaintiff's Warmer Packaging Trade Dress on Defendant Langley/Empire's "Plug In Warmer" packaging that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, or sponsorship of Defendant Langley/Empire's goods with Plaintiff's distinctive trade dress.

72.     Defendants' acts described in paragraph 71., above, were and are willful.

73.     Plaintiff's Plug-In Warmer Packaging Trade Dress is not functional, at least in part because there are alternatives to packaging that Defendant Langley/Empire itself has used and currently uses that do not resemble Plaintiff's Warmer Packaging Trade Dress, including, but not limited to, acetate packaging.

74.     As a result of Defendants' actions, Plaintiff has been damaged and is likely to be further damaged.

75.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, Plaintiff's damages, including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

WHEREFORE, Plaintiff requests the relief described below.

**FOURTH CAUSE OF ACTION**
**(All Defendants)**
**Tortious interference with existing and prospective economic relations**

76.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

77.     Defendants' violations of the Lanham Act constitute intentional interference with Plaintiff's existing and potential economic relations, for an improper purpose (namely, to appropriate Plaintiff's customers) or by improper means (namely, the violations of statutory law as described), and have caused injury to Plaintiff.

78.     In all this, Defendants' actions in violation of Plaintiff's rights were willful and wanton.

79.     As a result of Defendants' tortious interference, Plaintiff has been damaged and is likely to be further damaged, and is entitled to recover damages against Defendants in an amount to be proven at trial, together with punitive damages, plus interest and costs.

WHEREFORE, Plaintiff requests the relief as described below.

COMPLAINT - 18

**FIFTH CAUSE OF ACTION**
**(Individual Defendants)**
**Conspiracy**

80.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

81.     The Individual Defendants conspired to commit the acts alleged above, and committed at least one overt act to carry out the object of their conspiracy.

82.     As a result of the Individual Defendants' conspiracy, Plaintiff has been damaged and is likely to be further damaged, and is entitled to recover damages against the Individual Defendants in an amount to be proven at trial, together with punitive damages, plus interest and costs, and its attorney fees.

## IV.  PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief:

**FIRST CAUSE OF ACTION**
**(All Defendants)**
**Lanham Act – Deceptive Trade Practices/Trade Dress Infringement**
**Defendant Langley/Empire's "Dual Warmer" Packaging**
**(15 U.S.C. § 1125(a)(1)(B))**

Injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, Plaintiff's actual damages, including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

**SECOND CAUSE OF ACTION**
**(All Defendants)**
**Lanham Act – Deceptive Trade Practices/Trade Dress Infringement**
**Defendant Langley/Empire's "Fragrance Bar Warmer" Packaging**
**(15 U.S.C. § 1125(a)(1)(B))**

Injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, Plaintiff's actual damages, including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

**THIRD CAUSE OF ACTION**
**(All Defendants)**
**Lanham Act – Deceptive Trade Practices/Trade Dress Infringement**
**Defendant Langley/Empire's "Plug In Warmer" Packaging**
**(15 U.S.C. § 1125(a)(1)(B))**

Injunctive relief, impoundment and disposition of infringing products and material, Defendant Langley/Empire's profits, Plaintiff's actual damages, including treble damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

**FOURTH CAUSE OF ACTION**
**(All Defendants)**
**Tortious Interference**

Damages against Defendantsin an amount to be determined at trial, together with punitive damages, plus interest, costs, and attorney fees.

**FIFTH CAUSE OF ACTION**
**(Individual Defendants)**
**Conspiracy**

Damages against the Individual Defendants in an amount to be determined at trial, together with punitive damages, plus interest, costs, and attorney fees.

COMPLAINT - 20

RESPECTFULLY submitted this 21st day of December, 2012.

FILLMORE SPENCER LLC


/s/ Matthew R. Howell_____
By:  Barnard N. Madsen
     Matthew R. Howell
     Scott D. Preston
Attorneys for Plaintiff Rimports (USA) LLC

Plaintiff's Address:
Rimports (USA) LLC
201 East Bay Blvd
Provo, UT 84606-7305

COMPLAINT - 21