Scott R. Brown (*pro hac vice*)
Cheryl R. Burbach (*pro hac vice*)
Todd A. Gangel (*pro hac vice* application pending)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057
srb@hoveywilliams.com
clb@hoveywilliams.com
tgangel@hoveywilliams.com

H. Scott Jacobson (State Bar No. 8469)
STRONG & HANNI
3 Triad Center, Suite 500
Salt Lake City, Utah 84180
(801) 532-7080   Fax: (801) 596-1508
sjacobson@strongandhanni.com

ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **RIMPORTS (USA) LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**LANGLEY/EMPIRE CANDLE LLC**, *et al.*,<br><br>Defendants.<br><br>---<br><br>**LANGLEY/EMPIRE CANDLE LLC,**<br><br>Counterclaimant & Third-Party Plaintiff,<br><br>v.<br><br>**RIMPORTS (USA) LLC,**<br><br>Counterclaim Defendant,<br><br>and<br><br>**JOSHUA WRIGHT,**<br><br>Third-Party Defendant. | **LANGLEY/EMPIRE CANDLE LLC'S MEMORANDUM IN SUPPORT OF ITS RULE 56(d) MOTION TO DENY SUMMARY JUDGMENT, AND IN OPPOSITION TO RIMPORTS (USA) LLC & JOSHUA WRIGHT'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM & THIRD-PARTY CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS**<br><br>Case No.: 2:12-cv-01199-TC<br><br>Judge Tena Campbell<br><br>(Jury Trial Demanded) |

T<small>ABLE OF</small> C<small>ONTENTS</small>

I.  Introduction .................................................................................................. iii

II.  Response to Statement of Elements and Undisputed Material Facts ..................... iv

    A.  Responses to Legal Elements ........................................................... iv

    B.  Responses to Material Facts ............................................................ iv

    C.  Additional Material Facts ................................................................ xi

III.  Argument ................................................................................................... 1

    A.  Rimports and Wright's Trade-Secret Motion Relies Principally on Facts Solely Within Their Own Control ............................................. 1

    B.  Material Disputes of Fact Exist as to Issues on Which Rimports Does Not Control the Evidence ........................................................... 2

    C.  Expedited Discovery on Limited Issues Would Be Wasteful and Is Unwarranted Given the Parties' Proposed Trial Date. ....................... 4

IV.  Conclusion .................................................................................................. 6

## TABLE OF AUTHORITIES

### CASES

*Berkeley v. Home Ins. Co.*
    68 F.3d 1409 (D.C. Cir. 1995) ................................................................... 1

*Berkeley v. Home Ins. Co.*
    517 U.S. 1208 (1996) ................................................................................. 1

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*
    323 F.3d 767 (9th Cir. 2003) ..................................................................... 1

*Contractors Ass'n of E. Penn., Inc. v. City of Phila.*
    945 F.2d 1260 (3d Cir. 1991) ..................................................................... 2

*Convertino v. U.S. Dep't of Justice*
    684 F.3d 93 (D.C. Cir. 2012) ..................................................................... 1

*Dinkel v. Medstar Health, Inc.*
    286 F.R.D. 28 (D.D.C. 2012) ..................................................................... 1

*Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*
    338 F.3d 1024 (D.C. Cir. 2003) ................................................................. 1

*Int'l Shortstop, Inc. v. Rally's, Inc.*
    939 F.2d 1257 (5th Cir. 1991) ................................................................... 1

*Taylor v. Sparxent, Inc.*
    No. 2:10-CV-1007-TS, 2011 WL 1042567 (D. Utah Mar. 22, 2011) (unpublished) ................ 1

*Thomas v. City of Seattle*
    395 F. Supp. 2d 992 (W.D. Wash. 2005) ....................................................... 1

*Ward v. United States*
    471 F.2d 667 (3d Cir. 1973) ....................................................................... 2

### STATUTES

Fed. R. Civ. P. 56(d) ..................................................................................... 1, 6

# I. INTRODUCTION

This case has just begun. No written discovery has been completed, no Rule 16 conference has occurred, and no scheduling order has issued. Just last month, the Court denied Rimports (USA) LLC and Joshua Wright's motion to dismiss Langley/Empire Candle LLC's Counterclaim and Third-Party Complaint[1] for misappropriation of trade secrets. Yet only 17 days after the Court held that Langley/Empire had stated a plausible cause of action against them, Rimports and Wright moved for summary judgment, asserting that judgment as a matter of law is appropriate based solely on the self-serving declarations of Wright and his new boss at Rimports.

As shown below, Langley/Empire lacks sufficient information to admit or dispute the key factual assertions in Rimports and Wright's summary-judgment motion—*i.e.*, that Langley/Empire's trade secrets were not used by Rimports or Wright to cause Langley/Empire damage or unjustly enrich themselves. That information is in the exclusive possession, custody, or control of Wright, his boss, and/or other Rimports employees and agents, and the Court should not permit them to dodge full discovery by granting summary judgment solely on the basis of lawyer-prepared, un-cross-examined, written testimony.

Moreover, Rimports and Wright's attorneys have refused Langley/Empire's repeated requests to identify or produce the full complement of proprietary, trade-secret information and documents that Wright took with him after leaving Langley/Empire and "wiping" his company computer's hard drive clean. These "hide the ball" tactics are antithetical to the purpose and spirit of the liberal discovery regime established by the Federal Rules of Civil Procedure. The Court should deny summary judgment and enter a scheduling order allowing a reasonable time for full discovery on all parties' claims and causes of action.

---

[1] Throughout the remainder of this memorandum, Langley/Empire will refer to the Counterclaim and Third-Party Complaint collectively as the "Counterclaim."

## II.  RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A.  Responses to Legal Elements

Rimports has accurately stated the legal elements of a claim for misappropriation of trade secrets under Utah law in section V.B. of its motion.[2]

### B.  Responses to Material Facts

Langley/Empire's responses to Rimports and Wright's Statement of Material Facts are lodged solely for the purpose of responding to Rimports and Wright's Motion for Summary Judgment on Langley/Empire's Counterclaim, are based upon the information available to Langley/Empire as of the filing date of this memorandum, and are set forth subject to and without waiving Langley/Empire's Motion to Deny Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(d). Langley/Empire reserves the right to supplement its responses as discovery progresses in this case and additional factual information becomes available.

1.     During the period from 2003 until August 2011, Wright was employed by For Every Body, LLC ("For Every Body") in Lindon, Utah as a project manager. Declaration of Joshua Wright dated 23 August 2013 ("Second Wright Decl..") ¶ 2.

**RESPONSE:** Admitted.

2.     In August 2011, For Every Body was acquired by Langley/Empire (the "Acquisition"). Second Wright Decl. ¶ 3.

**RESPONSE:** Admitted.

3.     After the Acquisition, Wright became employed by Langley/Empire as a project manager but he continued to work in Utah. Second Wright Decl. ¶ 4.

**RESPONSE:** Admitted.

---

[2] *See* Doc. 51 at 9–11.

4.      Wright's employment with Langley/Empire continued until March 9, 2012. Second Wright Decl. ¶ 5.

**RESPONSE:** Admitted.

5.      After the termination of his employment with Langley/Empire, Wright became an employee of Rimports. Second Wright Decl. ¶ 28.

**RESPONSE:** Admitted.

6.      During his employment with For Every Body and later for Langley/Empire and in that capacity, Wright participated in a number of internal email exchanges concerning the development of packaging for For Every Body's and Langley/Empire's scented wax warmer products. Complaint Exhibits A, B, and C attached to the original Complaint filed in this matter each constitute one or more of such email threads that Wright participated in. Second Wright Decl ¶ 29.

**RESPONSE:** Admitted.

7.      Exhibits A, B, and C to the original Complaint are comprised of multiple email messages among For Every Body employees and Langley/Empire employees (including, in each instance, Wright) regarding products and product packaging. Some of the attachments to the emails were photographs of Rimports' products and packaging or other competitors' products and packaging. Some of the information in Exhibits A, B, and C included pricing information and packaging specifications concerning For Every Body's and/or Langley/Empire's products. All of the information in the emails was older than 11 January 2012. The packaging for the three lines of products discussed in these emails was on store shelves not later than 24 December 2012, the date Rimports filed its original Complaint. Second Wright Decl ¶ 30.

**RESPONSE:** Admitted.

8.      Prior to the Acquisition, Wright used a laptop computer owned by For Every Body to perform his responsibilities. Immediately prior to the Acquisition, For Every Body gave the laptop computer to Wright. For Every Body did not require Wright to delete, erase, or otherwise remove the information on the laptop computer related to For Every Body's business. Second Wright Decl ¶ 32.

**RESPONSE:** Admitted that while Wright was an employee of For Every Body, LLC ("FEB"), he used a laptop computer owned by For Every Body (the "FEB Laptop") to perform his responsibilities as an employee of FEB. Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the remaining assertions in paragraph 8.

9.      After the Acquisition, Langley/Empire did not supply Wright with a computer but understood that he would be using and did in fact use his own computer to perform his duties for Langley/Empire. For all of the email communications included in Complaint Exhibits A, B, and C, Wright used the laptop computer supplied by For Every Body and later given to him. Again, Wright continued to work in Utah while Langley/Empire is headquartered in Kansas City. During Wright's final week of employment, Rick Langley asked him to copy project files from the For Every Body server to Wright's personal hard disk and bring his hard disk to Kansas City to load on Langley/Empire's servers. Second Wright Decl ¶ 33.

**RESPONSE:** Disputed. When Langley/Empire's President and Chief Executive Officer, Rick Langley ("Mr. Langley"), learned in or about January 2012 that Wright was performing work for Langley/Empire on the FEB Laptop, Langley/Empire purchased and provided to Mr. Wright a new laptop computer to be used in connection with all of his Langley/Empire business (the "Langley/Empire Laptop"). Doc 65, September 23, 2013 Declaration of Richard Langley,

Jr., ¶ 16. Wright was directed to perform all duties for Langley/Empire using the Langley/Empire Laptop, and Mr. Langley understood that Wright complied with this direction after receiving the Langley/Empire Laptop. Doc 65 ¶ 17. Once Wright submitted his notice, Mr. Langley promptly requested that Wright transfer any Langley/Empire documents stored on the FEB Laptop onto Langley/Empire's company server. Mr. Langley did not ask Wright to use a "personal hard disk" to complete any such transfer and was unaware that Wright had done so. Mr. Langley also requested that Wright return the Langley/Empire Laptop to Langley/Empire. When the Langley/Empire Laptop was received at Langley/Empire, it was discovered that Wright had "wiped" the hard drive, leaving no copies of any Langley/Empire information and documents on the Langley/Empire Laptop. Doc 65 ¶ 18. In addition to maintaining a regular workplace in Utah, Wright traveled to Langley/Empire's headquarters in Kansas City, Kansas many times as part of his work responsibilities as a Langley/Empire employee. Doc. 66, September 23, 2013 Declaration of John Golden, ¶ 22.

10.    All of the information Wright retained after he terminated his employment with Langley/Empire was contained on the personal laptop and the personal hard disk. He does not have any copies of such information in any other location. Second Wright Decl ¶ 34.

**RESPONSE:** Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 10. Upon information and belief, discoverable information and documents (including forensic evidence) relevant to the factual assertions in paragraph 10 are contained on the FEB Laptop, on Wright's personal hard disk, and/or otherwise in the possession, custody, or control of Rimports and/or Wright.

11.    Although Wright possessed the laptop and hard disk, he never gave it or copies of any of the documents it contained to anyone at Rimports. During Wright's hiring process, before Jeff Palmer, the president of Rimports, first spoke with him, Palmer asked Wright if he had a confidentiality or nondisclosure agreement with Langley/Empire. After Wright said that he did not, the interview process continued. Second Wright Decl ¶ 37; Palmer Decl. ¶ 30.

**RESPONSE:** Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 11. Upon information and belief, discoverable information and documents (including forensic evidence) relevant to the factual assertions in paragraph 11 are contained on the FEB Laptop, on Wright's personal hard disk, and/or otherwise in the possession, custody, or control of Rimports and/or Wright.

12.    Five to six weeks after Wright was hired, Palmer told him about Langley/Empire's packaging Palmer had seen from a trade show that resembled Rimports' and asked Wright if he knew how that had happened. Wright told Palmer what he knew about Langley/Empire's intent to copy Rimports' packaging. Palmer asked Wright if he could prove it, and Wright told Palmer he had copies of emails and drawings. Palmer then directed Wright to discuss this with Rimports' lawyers. Second Wright Decl ¶ 38; Palmer Decl. ¶ 30.

**RESPONSE:** Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 12.

13.    Wright did not provide Palmer with copies or otherwise disclose the detailed contents of the emails or drawings. Wright did not provide such information to any other employee of Rimports. Instead, in connection with the preparation of the original Complaint in

this matter, Wright provided his laptop and the external hard disk directly to Beverly Royer, paralegal for Barnard Madsen, counsel for Rimports, and worked directly with her and with Mr. Madsen in discussing information contained in the documents included in Complaint Exhibits A, B, and C. Palmer Decl. ¶ 30; Second Wright Decl ¶ 39.

**RESPONSE:** Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 13. Upon information and belief, discoverable information and documents (including forensic evidence) relevant to the factual assertions in paragraph 13 are contained on the FEB Laptop, on Wright's personal hard disk, and/or otherwise in the possession, custody, or control of Rimports and/or Wright.

14.     Although Complaint Exhibits A, B, and C were filed with the Court and publicly available for a period of time before being sealed, Palmer never sought access to them during that time. Nor has he received them at any other time in any other manner. Similarly, neither Palmer nor Wright informed other Rimports employees of the existence of the information included in Complaint Exhibits A, B, or C, of any of the details of such information, or that such information had been filed with the Court. Neither Palmer nor Wright has any reason to believe that any Rimports employee ever sought access to such information while it was publicly available. Even if a Rimports employee did seek and obtain such access, no such employee has ever made use of such information in performing their work for Rimports. Based upon his position with Rimports, Wright would be aware of any employee that tried to make such use of that information. The only way in which Rimports has used the information included in Complaint Exhibits A, B, and C is in connection with this litigation. The only way Rimports has disclosed the information in Complaint Exhibits, A, B, and C was by filing it with the Court as

an attachment to the original Complaint. Palmer Decl. ¶ 31; Second Wright Decl ¶ 40.

**RESPONSE:** Because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 14. Upon information and belief, discoverable information and documents (including forensic evidence) relevant to the factual assertions in paragraph 14 are contained on the FEB Laptop, on Wright's personal hard disk, and/or otherwise in the possession, custody, or control of Rimports and/or Wright.

15.     In response to a request from Langley/Empire's counsel, Rimports' counsel wrote:

> There were two sources of the information Mr. Wright provided to our firm: a laptop given to him by the owners of For Every Body (a personal gift that never became Langley/Empire property) and a personal hard disk Langley/Empire well knew was Mr. Wright's and onto which it asked him to copy For Every Body documents and Langley/Empire project files for transfer to Langley/Empire's computers in Kansas City. Neither of these devices ever belonged to Langley/Empire. Therefore, contrary to your assertion, Mr. Wright did not make an unauthorized reproduction of the information and Langley/Empire has waived any claim of confidentiality. No one at Rimports other than Mr. Wright has seen the data on Mr. Wright's personal laptop or personal hard disk. Both the laptop and hard disk were transferred directly from his possession to ours, have been in our firm's possession since and for many months, and have been used only by attorneys and paralegals at our firm to prepare the trade dress infringement lawsuit against Langley/Empire and the other defendants. They have not and will not be used by Rimports outside this litigation or for any other commercial purpose. Because Mr. Wright has already provided a copy of this information to Langley/Empire via transfer from his personal hard disk, and because that hard disk is safely in our possession, we see no need to provide a copy to Langley/Empire at this time.

Declaration of Beverly A. Royer, dated 21 August 2013 ("Royer Decl."), ¶ 5.

**RESPONSE:** Admitted that Rimports' counsel wrote the quoted language in response to a request from Langley/Empire's counsel. To the extent Rimports and Wright offer the quoted

x

language as proof of the truth of the matter asserted, this out-of-court statement is hearsay, and the Court should disregard its substance. Further, because no discovery has been completed, Langley/Empire lacks sufficient information to admit or dispute the factual assertions in paragraph 13.

### C.  Additional Material Facts

16.     The Langley/Empire information and documents to which Wright had access during his employment with Langley/Empire (the "Langley/Empire Trade Secrets"), had and continue to have economic value to Langley/Empire and its competitors, in that they include, without limitation, information regarding Langley/Empire's costs and profit margins, and customer-specific emails from CVS and other customers of Langley/Empire. Doc 65 ¶ 19.

17.     The Langley/Empire Trade Secrets consist of information and documents beyond those contained in Exhibits A, B, and C to Plaintiff's original Complaint, and include email exchanges, photographs, price-quotation sheets, design specifications, technical drawings, and other business documents of Langley/Empire. Doc 65 ¶ 20; *see also* Doc. 35, Counterclaim and Third-Party Claim, Doc. 35, at 10–11, ¶¶ 12–13.

18.     With access to the Langley/Empire Trade Secret Information, Rimports or another competitor of Langley/Empire could have negotiated a better price for its packaging to either lower its price or increase its profit margins. Before Wright terminated his employment with Langley/Empire, Langley/Empire's Plug-In Warmers had a retail price of approximately $8.00. By contrast, ScentSationals® Plug-In Warmers retailed for approximately $10.00 at Walmart during the same time period. Doc 65 ¶ 21.

19.     In 2011, Wright directed and controlled the creation, design, and manufacturing of the packaging for the Fragrance Bar Warmer developed and sold by Langley/Empire. Doc 65 ¶ 4.

20.     In 2012, Wright directed and controlled the creation, design, and manufacturing of the packaging for the Plug-In Fragrance Warmer developed and sold by Langley/Empire. Doc 65 ¶ 5.

21.     No one on behalf of Langley/Empire instructed Wright to copy the packaging of the ScentSationals® Fragrance Hearth scented wax warmers, the Better Homes and Gardens® brand "Scented Wax Warmers," the ScentSationals® Mini Warmers, or the Better Homes and Gardens® brand "Plug-In Warmers" sold by Plaintiff (collectively, "Plaintiff's Wax-Warmer Packaging") in the creation, design, and manufacture of the packaging for the Fragrance Bar Warmer or Plug-In Fragrance Warmer. Doc 65 ¶ 5.

22.     To the extent certain features of Plaintiff's Wax-Warmer Packaging may have been copied, Mr. Wright did so on his own and not at the direction of Langley/Empire. Doc 65 ¶ 6.

23.     John Golden, Langley/Empire's current Product Development and Sourcing Manager and former Director of Marketing ("Mr. Golden"), has no recollection of telling Wright that Langley/Empire had decided it wanted to use packaging that resembled Rimports' packaging. Doc 66 ¶ 18.

24.     Mr. Golden does not specifically recall ever sending Wright to a Walmart to purchase a Rimports warmer or any other warmer. However, retail auditing is a common practice in Langley/Empire's industry, as it is in any retail industry. To the extent Wright was instructed to purchase a warmer at Walmart, it was not for the purpose of copying such warmer's dimensions and packaging features. Doc 66 ¶ 19.

25.     Mr. Golden has no recollection of Wright protesting to him or raising concerns with him regarding the packaging of Rimports' products, or warning him that Langley/Empire could be sued for any of its packaging designs. Doc 66 ¶ 20.

26.     Mr. Golden has no recollection of Wright lodging a protest regarding any products requested to be sent to Langley/Empire's customers for review. Doc 66 ¶ 21.

\*\*\*

## III. ARGUMENT

### A. Rimports and Wright's Trade-Secret Motion Relies Principally on Facts Solely Within Their Own Control.

Rimports and Wright concede there may be genuine disputes of material fact as to the existence of Langley/Empire's trade secrets and Langley/Empire's efforts to maintain their secrecy.[3] They contend only that they never used the trade secrets to cause damage to Langley/Empire or unjustly enrich themselves. Declarations from Wright and his boss, Rimports CEO Jeffrey Palmer, are the sole admissible support for their contention.[4]

Rule 56(d), formerly Rule 56(f), allows the Court to deny or defer a summary-judgment motion if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition … ."[5] Rule 56(d) motions "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'"[6] "That is particularly true where, as here, the court is presented with a pre-discovery motion for summary judgment because '[s]ummary judgment ... is proper only after the plaintiff has been given adequate time for discovery.'"[7] Moreover, "[i]f information concerning the facts to be discovered is solely in the possession of the movant, … 'a motion for

---

[3] Doc. 51 at 11.

[4] Rimports and Wright also reference statements made by one of their attorneys in a letter to Langley/Empire's counsel. This is a double-hearsay statement that the Court may not consider as support for the truth of the matter asserted.

[5] Fed. R. Civ. P. 56(d).

[6] *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995), *cert. denied*, 517 U.S. 1208 (1996)); *see also Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 774 (9th Cir. 2003); *Thomas v. City of Seattle*, 395 F. Supp. 2d 992, 999 (W.D. Wash. 2005); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991); *see also, e.g., Taylor v. Sparxent, Inc.*, No. 2:10-CV-1007-TS, 2011 WL 1042567 (D. Utah Mar. 22, 2011) (unpublished, attached as **Exhibit A**).

[7] *Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 31 (D.D.C. 2012) (quoting *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003)); *see also, e.g., Taylor*, 2011 WL 1042567 (D. Utah Mar. 22, 2011).

continuance of a motion for summary judgment for purposes of discovery should [then] ordinarily be granted almost as a matter of course.'"[8]

Here, all three situations in which courts routinely grant Rule 56(d) motions are present. Rimports and Wright have filed a pre-discovery summary-judgment motion—two of them, actually. Langley/Empire's counsel has attempted to pursue discovery as diligently as possible, hand-delivering interrogatories and requests for production to Rimports and Wright's attorneys the day after their Rule 26(f) teleconference.[9] But Rimports and Wright have now moved for a protective order to delay or avoid providing answers.[10] Thus, Rimports and Wright have thwarted Langley/Empire's diligent attempts to begin the discovery process.

More importantly, the information and documents necessary for Langley/Empire to support the final element of its cause of action for trade-secret misappropriation are solely in the possession, custody, or control of Rimports, Wright, Palmer, or other Rimports employees and agents.[11] Essentially, Rimports and Wright have moved for summary judgment on the grounds of "Take our word for it, Your Honor."

### B. Material Disputes of Fact Exist as to Issues on Which Rimports Does Not Control the Evidence.

The declarations on file show that there are already genuine factual disputes between Wright and Langley/Empire. In support of its motion, Rimports alleges that Langley/Empire's information has no value to Rimports.[12] But Langley/Empire's Presndent and CEO, Rick Langley, demonstrates that Rimports or another competitor of Langley/Empire could have used

---

[8] *Contractors Ass'n of E. Penn., Inc. v. City of Phila.*, 945 F.2d 1260, 1263 (3d Cir. 1991) (quoting *Ward v. United States*, 471 F.2d 667, 670 (3d Cir. 1973) (alteration in original)).

[9] *See* Doc. 58 at 2, ¶ 1.c; Doc. 62, Declaration of Cheryl L. Burbach ¶ 13.

[10] Doc. 60.

[11] *See* Facts ¶ 10–11, 13.

[12] *See* Doc. 51 at 15.

2

Langley/Empire Trade Secrets to negotiate a better price for its packaging to either lower its price or increase its profit margins.[13] The 20-percent price difference between Rimports' products and Langley/Empire's products during Wright's tenure as a Langley/Empire employee[14] suggests that Langley/Empire may have negotiated lower prices for its packaging and other production costs than Rimports had been able to do.

Many contradictions directly impacting the veracity of Rimports and Wright's allegations credibility are also readily apparent. Mr. Langley attests that Wright directed and controlled the creating, design, and manufacturing of the product packaging at issue in Rimports' trade-dress-infringement claim.[15] Wright asserts that he was essentially just following orders.[16] Mr. Langley also attests that neither he nor anyone else on behalf of Langley/Empire instructed Wright to copy the packaging of Rimports' products in the creation, design, and manufacture of Langley/Empire's product packaging—and that if Wright did so, he did so on his own.[17] Wright's assertions to the contrary[18] are at the heart of Rimports' trade-dress-infringement claim.

Further, contrary to Wright's assertion,[19] Mr. Golden has no recollection of telling Wright that Langley/Empire had decided it wanted to use packaging that resembled Rimports' packaging.[20] Mr. Golden does not specifically recall ever sending Wright to a Walmart to purchase a Rimports warmer or any other warmer,[21] which is also contrary to Wright's

---

[13] Facts ¶ 18.

[14] Facts ¶ 18.

[15] Facts ¶¶ 19–20.

[16] *See* Doc. 30 ¶¶ 15–18.

[17] Facts ¶¶ 21–22.

[18] *See* Doc. 30 ¶¶ 15, 17–18.

[19] Doc. 30 ¶ 15.

[20] Facts ¶ 23.

[21] Facts ¶ 24.

assertion.[22] Nor does Mr. Golden recall Wright protesting to him or raising concerns with him regarding the packaging of Rimports' products, warning him that Langley/Empire could be sued for any of its packaging designs,[23] lodging a protest regarding any products requested to be sent to Langley/Empire's customers for review[24]—again, all contrary to Wright's assertions.[25]

Additionally, Wright claims Langley/Empire did not supply him with a computer.[26] Mr. Langley says he bought a computer for Wright (and has the receipt to prove it), which he directed Wright to use in performing all his work for Langley/Empire.[27] Wright says Mr. Langley asked him to copy files to a personal hard disk; Mr. Langley says that is not true.[28]

In sum, large swaths of this case are the subject of a swearing match, but without the benefit of any discovery or cross-examination to test the veracity of the statements being made.[29] Full discovery is necessary to determine the truth—as to both Rimports' claim and Langley/Empire's Counterclaim.

### C. Expedited Discovery on Limited Issues Would Be Wasteful and Is Unwarranted Given the Parties' Proposed Trial Date.

The parties have proposed a five-day jury trial beginning on January 15, 2015.[30] Yet Rimports and Wright have suggested that the Court limit or expedite discovery on certain issues

---

[22] Doc. 30 ¶ 17.

[23] Facts ¶ 25.

[24] Facts ¶ 26.

[25] Doc. 30 ¶¶ 19, 21.

[26] Facts ¶ 9.

[27] Facts ¶ 9.

[28] Facts ¶ 9.

[29] It is particularly disturbing and smacks of sharp practices that Rimports seeks summary judgment based upon allegations for which it knows it controls much of the relevant evidence for. Equally troubling is Rimports' seeking summary judgment on fact-intensive determinations relating to its own claim, such as functionality, secondary meaning, and likelihood of confusion—all before a single interrogatory has been answered or document has been produced.

[30] Doc. 58 at 6, ¶ 7.

if it grants Langley/Empire's Rule 56(d) motion.[31] Conducting limited-scope discovery would place an undue burden on Langley/Empire and would increase all parties' time and expense. Langley/Empire intends to conduct discovery on a variety of topics relevant to both its claims and its defenses,[32] and there will likely be significant overlap between the information, documents, and witnesses relevant to Rimports' claim and those relevant to Langley/Empire's Counterclaim.[33]

For instance, electronically stored information and metadata on the FEB Laptop, Wright's personal hard disk, and other electronic devices is not only relevant to Wright's and Palmer's assertions that no one else at Rimports has seen the Langley/Empire Trade Secrets, but is also relevant to Wright's assertions that he copied Rimports' alleged trade dress. Indeed, even Rimports and Wright's extraordinarily perfunctory initial disclosures reveal that Wright and Palmer have discoverable information regarding, respectively, "all subjects" and "all claims brought by Rimports and all claims brought against Rimports."[34] Thus, these two key Rimports witnesses are at the heart of all the pending causes of action; indeed, Palmer or other Rimports employees may eventually join Wright as third-party defendants, depending on what the forensic electronic evidence reveals. Requiring the parties to depose witnesses twice—once on the Counterclaim and once on Rimports' claim—or to conduct piecemeal document productions relating to selected topics would be an undue and wholly unnecessary burden.[35]

Rimports and Wright's request for limited or expedited discovery is of a piece with the "Nothing to see here!" posture their attorneys have adopted since the beginning of this case.

---

[31] Doc 58 at 5, ¶ 2.b.

[32] *See* Doc. 62 ¶¶ 4–10.

[33] Doc. 62 ¶ 12, 14.

[34] Doc. 62 ¶ 12 and Exhibit A.

[35] Doc. 62 ¶ 15.

They have repeatedly rebuffed Langley/Empire's counsel's requests to simply produce copies of all Langley/Empire Trade Secrets in Rimports' or Wright's possession, custody, or control.[36] Instead, they release the documents in dribs and drabs as they see fit to support their own claim,[37] while denying Langley/Empire access to the documents to support its Counterclaim and defenses. This emerging pattern of Rimports and Wright throwing up roadblocks to the free exchange of relevant information in discovery may cause the Court to wonder what they are hiding.

Whatever the answer, it is time for the games to stop. The Court should deny Rimports and Wright's motion, issue a scheduling order, and allow discovery to proceed as in any other case.

## IV. CONCLUSION

For the reasons set forth above, Langley/Empire respectfully requests that the Court deny Rimports and Wright's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d), on grounds that no discovery has been completed in this case and, therefore, significant material facts are in Rimports and Wright's sole possession, and unavailable to Langley/Empire.

---

[36] Doc. 62 ¶¶ 2–3.

[37] *See* Exhibits 1–2, 4–7, 13–14, which fall within the definition of Langley/Empire Trade Secrets (*see* Doc. 35 at 11–12, ¶¶ 12–13) but were not previously attached as Exhibits to Rimports' Complaint, otherwise filed with the Court, or produced to Langley/Empire or its counsel.

Dated: September 23, 2013        Respectfully Submitted,

s/ Cheryl R. Burbach
Scott R. Brown (*pro hac vice*)
Cheryl R. Burbach (*pro hac vice*)
Todd A. Gangel (*pro hac vice* application pending)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057
srb@hoveywilliams.com
clb@hoveywilliams.com
tgangel@hoveywilliams.com

H. Scott Jacobson (State Bar No. 8469)
STRONG & HANNI
3 Triad Center, Suite 500
Salt Lake City, Utah 84180
(801) 532-7080   Fax: (801) 596-1508
sjacobson@strongandhanni.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on September 23, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM / ECF system, which sent notification of such filing to the following registered users of the ECF system:

Barnard N. Madsen, bmadsen@fslaw.com
Matthew R. Howell, mhowell@fslaw.com
Scott D. Preston, spreston@fslaw.com
FILLMORE SPENCER LLC
3301 North University Avenue
Provo, Utah 84604
(801) 426-8200

ATTORNEYS FOR PLAINTIFF
AND THIRD-PARTY DEFENDANT

s/ Cheryl L. Burbach
Attorney for Defendants